MOUNT SNOW, LTD.,    :
          :
    Plaintiff,  :
          :
   v.     :  Case No. 2:12-cv-022-wks
          :
ALLI, THE ALLIANCE OF ACTION :
SPORTS LLC, NBC UNIVERSAL  :
MEDCIA, LLC F/K/A NBC    :
UNIVERSAL, INC., NBC SPORTS :
VENTURES LLC, MTV NETWORKS  :
COMPANY N/K/A VIACOM MEDIA  :
NETWORKS, VIACOM      :
INTERNATIONAL, INC.,    :
          :
    Defendants. :

## Memorandum Opinion and Order: Plaintiff's Motion for Leave to File Second Amended Complaint

Defendant Alli *et al.* runs the competitive ski and snow board event called the Winter Dew Tour ("WDT"). Pursuant to an Agreement entered into in November 2009, Defendants were to hold the WDT at Mount Snow in the winter seasons of 2009-10 and 2010-11, and, optionally, in 2011-12. Either party could terminate the agreement for convenience prior to the 2010-11 season by providing notice on or before April 8, 2010. Without providing a timely notice of termination, in July 2010, Alli cancelled the event at Mount Snow and announced that the Killington Resort would host the event instead.

Mount Snow brought this action claiming breach of contract. Mount Snow now moves to file a Second Amended Complaint, adding claims for breach of the implied covenant of good faith and fair dealing, breach of contract implied in law or fact, and constructive fraud. It also seeks to add Viacom International, Inc., as an additional party. Defendants oppose the motion only as to Mount Snow's claim of constructive fraud.

Defendants argue that the Motion to Amend to add the constructive fraud claim should fail for two reasons: the elements of the fraud claim are not pled with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure, and the motion to amend is futile as it fails to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

<b>Discussion</b>

**I. Particularity Requirement for Pleading Fraud**

Rule 9(b) requires that, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Under the rule, allegations of fraudulent misrepresentations must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made,

and (4) explain why the statements were fraudulent." *Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir. 2004) (citation omitted). "In applying *rule 9(b)* we must not lose sight of the fact that it must be reconciled with *rule 8* which requires a short and concise statement of claims." *Felton v. Walston & Co.,* 508 F.2d 577, 581 (2d Cir. 1974).

"Constructive fraud may occur where a wrongful act injures another but is done without bad faith or a malevolent purpose on the part of the perpetrator. It may be found in cases involving misrepresentations that do not rise to the level of deceit, or actual fraud, and in cases where a party in a position of superior knowledge or influence intentionally gains an unfair advantage at the expense of another person." *Hardwick-Morrison Co. v. Albertsson,* 158 Vt. 145, 150, 605 A.2d 529 (Vt. 1992) (citing *Proctor Trust Co. v. Upper Valley Press, Inc.,* 137 Vt. 346, 354, 405 A.2d 1221, 1226 (Vt. 1979); *Griffin v. Griffin,* 125 Vt. 425, 437-38, 217 A.2d 400, 410 (Vt. 1965)). Although constructive fraud does not require an intent to mislead, the other elements of fraud must be met. *See Kaiser v. Cyr,* 2008 Vt. Super. LEXIS 76, *14-15 (Sup. Ct. Vt. 2008) (citing *Sugarline Assocs. v. Alpen Assocs.,* 155 Vt. 437, 444, 586 A.2d 1115 (Vt. 1990)).

Plaintiff asserts that this Court should follow the

lead of the "many courts [that] decline to apply the
particularity requirement of Rule 9(b) to claims for
constructive fraud." Plf.'s Reply at 2-3. Because, as
explained below, the Court finds that Plaintiff has met the
Rule 9(b) requirements, it need not decide whether
constructive fraud claims are excluded from Rule 9(b).

Plaintiff alleges that "[e]mail correspondence between
Alli and Mount Snow confirms that through the end of June
2010, Alli continued to represent that it would hold the
2010-2011 WDT at Mount Snow." Second Amended Complaint ¶
42. This allegation, although brief, serves to provide
sufficient notice to Defendants regarding the statements
that Plaintiff contends were fraudulent (email
correspondence), the speaker of the statements (Defendant
Alli), and when the statements were made (through the end
of June 2010). *See In re Initial Public Offering
Securities,* 241 F.Supp.2d 281, 327 (S.D.N.Y. 2003) (fraud
may be pled "without long or highly detailed particularity,"
so long as the complaint identifies the who, what, when,
where, and why of the alleged fraud).

Mount Snow has also sufficiently pled an explanation
as to why the statements were allegedly fraudulent. *Rombach,*
355 F.3d at 172 ("To meet the pleading standard of *Rule
9(b),* this Court has repeatedly required, among other

things, that the pleading 'explain why the statements were fraudulent.'") (citation omitted). Mount Snow alleges, "[u]pon information and belief, before cancelling the 2010-2011 WDT at Mount Snow and without Mount Snow's knowledge, Alli engaged in communications with another ski resort(s) about holding the east coast stop of the WDT at that resort(s) instead of honoring its Agreement with Mount Snow for the 2010-2011 winter season." Second Amended Complaint ¶ 43. Mount Snow also alleges that an email correspondence from Alli shortly after it had cancelled its agreement to hold the WDT at Mount Snow in the 2010-11 season confirmed that it had been in such conversations with Killington resorts. *Id.* ¶ 44. The allegations can readily be understood, therefore, to support a finding that Defendants committed fraud when they misrepresented their intentions to continue to hold the WDT at Mount Snow while they actively sought another venue for the event. "[M]isrepresentations about future actions can be fraudulent if, at the time the statements are made, the maker intends to act differently from his or her promise." *Ben & Jerry's Homemade, Inc. v. La Soul, Inc.,* 983 F.Supp. 504, 506 (D. Vt. 1997) (citations omitted). Alternatively, the allegations support a finding that Defendants committed fraud when they omitted in their communications with Mount

Snow their intention to hold the WDT event elsewhere. *See*
*Sugarland Associates,* 155 Vt. at 444, 586 A.2d at 1119
("Liability for fraud may be premised on the failure to
disclose material facts as well as on affirmative
misrepresentations.").

In short, although the allegations are not highly
detailed, they serve the purpose of Rule 9(b) by providing
sufficient notice of the alleged fraud to permit Defendants
to respond, and are sufficient to show that Plaintiff's
claim is not frivolous. *See In re Initial Public Offering*
*Securities,* 241 F.Supp.2d at 325. Plaintiff has pled
sufficient particularity under Rule 9(b).

## II. Stating a Claim Upon Which Relief May be Granted

Defendants also assert that the Court should deny
Plaintiff's Motion to Amend because the constructive fraud
claim fails to state a claim upon which relief may be
granted under Rule 12(b)(6). Fed.R.Civ.P. 12(b)(6); *see*
*Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123
(2d Cir. 1991) (the court need not allow the filing of a
proposed amendment "if it does not state a claim upon which
relief may be granted."). They claim that Plaintiff has
failed to sufficiently allege that it reasonably relied on
Alli's alleged misrepresentations, that Alli had no duty to

disclose its discussions with other ski resorts, and that
the claim is barred by the economic loss rule.  In
reviewing Defendants' assertions, the Court will consider
whether "it appears beyond doubt that the plaintiff can
prove no set of facts in support of [its] claim which would
entitle [it] to relief." *Harris v. City of New York,* 186
F.3d 243, 247 (2d Cir. 1999).  The Court will accept
plaintiff's factual allegations as true and draw all
reasonable inferences from those allegations in the
plaintiff's favor.

Defendants assert that Plaintiff has failed to plead
sufficient facts showing its reliance on Defendants'
alleged misrepresentations.  To maintain a claim for
constructive fraud, the party claiming fraud must show that
he "*justifiably relied* on the statements or conduct of the
other. Liability in fraud extends only to harm caused by
the buyer's 'justifiable reliance upon the
misrepresentation.'" *Sugarland Associates* 155 Vt. at 445,
586 A.2d at 1120 (italics in original) (quoting *Proctor
Trust Co.,* 137 Vt. at 351, 405 A.2d at 1224-25 (quoting
Restatement of Torts § 525 (1938))).

Mount Snow alleges that it "relied on Alli's
representation that it would hold the 2010-2011 WDT at
Mount Snow." Second Amended Complaint ¶ 46.  Defendants

assert that this conclusory statement of reliance is insufficient to meet pleading standards. Reading the Complaint as a whole and in a light most favorable to Plaintiff, however, one can glean the factual basis for its allegation of reliance. Plaintiff alleges that its agreement with Defendants obligated them to hold the WDT athletic event at Mount Snow during the 2010-2011 winter season. *Id.* ¶ 10. Mount Snow, in turn, was obligated to provide certain areas, facilities and services to host the WDT event. *Id.* ¶ 12. Mount Snow would receive certain benefits from hosting the event and, in the 2009-10 season, it received $2,000,000 worth of media value. *Id.* ¶¶ 13, 22. According to the terms of the agreement, if Alli wished to terminate for convenience, it had to, but did not, notify Mount Snow by April 8, 2010. The Court may draw the reasonable inference that, when this date passed and when Mount Snow received assurances from Alli that they would proceed with the event during the coming winter season, Mount Snow did not undertake any particular action to either plan for or mitigate the loss of benefits that it understood, in reliance on Defendants' words and deeds, it would receive from hosting the event. Thus, as Plaintiff alleges, "[a]s a direct consequence of Alli's misrepresentation, omission, and decision to cancel the WDT

event at Mount Snow, [it] has suffered monetary damages in excess of $2 million." *Id.* ¶ 47. The proposed Second Amended Complaint as a whole provides sufficient specificity to support Mount Snow's allegation that it justifiably relied on Alli's alleged misrepresentation. The allegations are sufficient to allow the claim in the proposed Second Amended Complaint to survive a motion to dismiss.

Defendants also assert that they had no duty to inform Mount Snow that they were engaged in discussions with another ski resort. Defendants' assertion that they had no duty to disclose would be reasonable if Alli had *not* led Mount Snow to understand that the WDT event would be held at Mount Snow. But that was not the case. Once Alli made representations that could reasonably be construed as assurances, then it is reasonable to assume a duty to be forthright arose and that their talks with other resorts were material and should have been disclosed. At this stage, the Court may draw a reasonable inference that Defendants had a duty to disclose their intentions, and their actions that were material to these intentions, to Mount Snow.

Defendants also argue that Plaintiff's constructive fraud claim is barred under Vermont's well-established economic loss rule, which provides that "claimants cannot

seek, through tort law, to alleviate losses incurred pursuant to a contract." *Springfield Hydroelectric Co. v. Copp,* 172 Vt. 311, 314, 779 A.2d 67, 70 (Vt. 2001). The economic loss rule "prohibits recovery under tort for purely economic losses." *Id.*

Plaintiff correctly points out that where, as here, defendants dispute the existence of a valid agreement between the parties, an alternative theory based on fraud should not be barred by the doctrine. *Caleidescope Comm. Corp. v. Fairpoint Comm., Inc.,* 2009 U.S. Dist. LEXIS 51755, *6-7 (D. Vt. June 16, 2009); *see also Strobl v. New York Mercantile Exchange,* 768 F.2d 22, 30 (2d Cir. 1985) (Federal Rules of Civil Procedure "provide that inconsistent causes of action may be stated alternatively or hypothetically.") (citing Federal Rules of Civil Procedure 8(a)(3) and 8(e)(2)). Defendants counter that the Court should not follow *Caleidescope Comm.* because it involved a claim of fraudulent intent, while Mount Snow is alleging negligent, not intentional, conduct. But in fact Plaintiff does allege, alternatively, intentional conduct. It alleges that Defendants "*intentionally misrepresented and/or failed to advise Mount Snow of the discussion*" with other ski resorts about moving the WDT event away from Mount Snow. Second Amended Complaint ¶ 45. Although Mount

Snow's proposed claim sounds primarily in constructive fraud, its allegations give rise to the inference that Defendants intended to mislead, supporting a claim of actual, or intentional, fraud.

In any event, Defendants do not provide a convincing rationale for this Court to apply the economic loss rule to bar the constructive fraud claim in the face of Vermont precedent that points in the opposite direction. Without raising the concern over the economic loss doctrine, at least one Vermont Court has granted damages for economic losses in a constructive fraud case. *See Hardwick-Morrison Co. v. Albertson,* 158 Vt. 145, 605 A.2d 529 (Vt. 1992).

Defendants cite no Vermont precedent establishing that the economic loss doctrine applies to either actual or constructive fraud claims. Accordingly, the Court declines to bar plaintiff's constructive fraud claim based on the economic loss doctrine.

Plaintiff's constructive fraud claim is not futile because it would survive a 12(b)(6) motion to dismiss.

## Conclusion

"In determining whether to grant leave to amend, the Court should consider whether the motion is being made after an inordinate delay without adequate explanation, whether prejudice to the defendants would result, whether

granting the motion would cause further delay, and whether the amendment would be futile." *Mountain Cable Co. v. Pub. Serv. Bd.,* 242 F. Supp. 2d 400, 403 (D. Vt. 2003) (citing *Grace v. Rosenstock,* 228 F.3d 40, 53-54 (2d Cir. 2000)). None of these factors weigh against granting the motion. Accordingly, the Court grants Plaintiff's Motion for Leave to File Second Amended Complaint.

Dated at Burlington, in the District of Vermont, this 30th day of May, 2012.

/s/William K. Sessions III
William K. Sessions III
U.S. District Court Judge
