UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| MOUNT SNOW LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | File No. 1:12-cv-22-jgm |
| | : | |
| ALLI, THE ALLIANCE OF ACTION SPORTS, | : | |
| NBC UNIVERSAL MEDIA, LLC, | : | |
| NBC SPORTS VENTURES LLC, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT**
(Docs. 79, 81)

I.    Introduction

In June 2011, Plaintiff Mount Snow Ltd. (Plaintiff or "Mount Snow") commenced this

diversity breach of contract action in Vermont state court.  In January 2012, the suit was removed

to this Court.  (Doc. 1.)  Mount Snow currently alleges breach of contract, breach of the implied

covenant of good faith and fair dealing, breach of contract implied in law or fact, and constructive

fraud against ALLI, the Alliance of Action Sports ("Alli"), NBC Universal Media, LLC, and NBC

Sports Ventures LLC (collectively, Defendants).[1]  (Doc. 31 (Second Am. Compl.) ("Compl.").)  The

claims arise from Defendants' decision to relocate the east coast 2011 Winter Dew Tour stop, a

weekend skiing and snowboard event that had been hosted at Mount Snow in 2009 and 2010.

Mount Snow moves for summary judgment on its breach of contract claim seeking a ruling it is

entitled to recover damages to be determined by the trier of fact.  (Doc. 79.)  Defendants oppose

the motion.  (Doc. 85.)  Defendants move for summary judgment dismissing the complaint in its

entirety.  (Doc. 81.)  Mount Snow opposes the motion.  (Doc. 86.)  Having considered the parties'

_____

[1] Other defendants NBC Universal, Inc., MTV Networks Company, John Does, and
Viacom International, Inc. have been either dropped from the suit in subsequent complaints or
dismissed by stipulation.  See Docs. 31, 63.

pre-hearing memoranda (Docs. 79, 81, 85, 88, 91), arguments made at the June 24, 2013 hearing,

and post-hearing memoranda (Docs. 99-101), for the following reasons, Mount Snow's motion is

denied and Defendants' motion is granted in part and denied in part.

II.     Background[2]

The case arises from Defendants' decision to relocate the 2011 Winter Dew Tour east coast

location from Mount Snow to Killington.  Mount Snow is a ski and snowboard resort in West

Dover, Vermont.  Defendant Alli, owned by Defendant NBC Universal Media, LLC, is an organizer

of action sports events, including the Winter Dew Tour, a series of extreme skiing and

snowboarding events for elite athletes nationally televised on NBC and other channels.  Mount

Snow hosted Alli's 2009 inaugural Winter Dew Tour east coast event.  Alli did not pay Mount Snow

to host the event.

In November 2009, the parties began negotiating a two-year agreement under which Mount

Snow would host a stop on the Winter Dew Tour in 2010 and 2011, with an option for 2012.  Also

beginning in November, Mount Snow increased snowmaking in preparation for hosting the 2010

event.  Other preparations, such as reserving hotel rooms, scheduling, and arranging for the

construction of the course and an area for spectators and display monitors, were ongoing

throughout the winter.

During January 2010, Greg Fisher, Mount Snow's Marketing and Events Director, and

Aileen Koprowski, an Alli representative, exchanged drafts of the agreement.  On Sunday,

January 24, 2010, Mr. Fisher emailed Ms. Koprowski asking "Can we sign?"  (Doc. 85-7.)

Ms. Koprowski responded "Yep.  Sending over today.  Just a few comments on that change.

---

[2] The facts are gleaned from the parties submissions, specifically their respective statements
of fact and responses.  (Docs. 79-1, 81-3, 85-1, 87, 89.)  The Court notes instances in which the
parties disagree.

2

Chris [Prybylo] and I will call you tomorrow." (Doc. 85-7.) The next day, she sent Mr. Fisher an email, including an attachment titled "Mount Snow draft_1.21.doc," noting she "updated the termination clause" and that they could talk the next day. (Doc. 81-14.) Mount Snow's General Manager, Kelly Pawlak, signed the document attached to the January 25 email. (Doc. 79-5 at 24.) The signature line for Chris Prybylo, Vice President of Events for Alli, is blank. Id. Neither party has produced a fully executed agreement, but Mount Snow does not rule out the possibility that one exists. Compare Doc. 85-1 ¶¶ 33-34 with Doc. 89 ¶¶ 33-34; see also Doc. 79 at 5 n.2.

Mount Snow hosted the third and final event of the 2009-2010 Winter Dew Tour on February 4-7, 2010. Alli did not pay Mount Snow to host the event. The halfpipe used for the event had 18' walls. On Sunday, February 7, representatives from Mount Snow and Alli had lunch at Mount Snow and the topic of halfpipe size was discussed. Compare Doc. 79-1 ¶ 20 with Doc. 85-1 ¶ 20. The 2010 Winter Olympics in Vancouver, held shortly after the 2010 Mount Snow Dew Tour event, used a halfpipe with 22' walls. Alli's wrap-up materials for 2010 stated the Dew Tour event provided Mount Snow with $2,000,000 in media value.

On April 9, 2010, Mr. Prybylo emailed Ms. Pawlak asking to discuss a 2011 event date and "thoughts/feedback" on an 18' versus a 22' halfpipe. (Doc. 81-18.) Mr. Prybylo also stated: "Know we need to solve the issues above before we can move forward with next year and think we are quickly approaching the 60 day window in the contract." Id. The parties' agreement included a termination clause stating "either party may terminate the portion of this agreement pertaining to hosting the 2011 WDT [Winter Dew Tour] if it notifies the other party no later than 60 days after the completion of the 2010 WDT held at Mount Snow." (Doc. 79-5 at 2.) In the absence of termination, "the Term of this agreement will automatically be renewed for a third year." Id. at 3. On April 20, upon her return from vacation, Ms. Pawlak responded to Mr. Prybylo "we are still in the 18' camp." (Doc. 81-19.)

The 2011 east coast stop of the Winter Dew Tour was held at Killington Resort, in Killington, Vermont.  Alli agreed to pay Killington over $150,000 to cover the costs associated with development of the competition venues, trail reconstruction, and snowmaking requirements. (Doc. 81-26 ¶ 2.3, 2.3.5, 2.4.)  While Alli did not pay Mount Snow to host either the 2009 or 2010 events, Mount Snow's expenses were approximately $100,000.[3]  The three 2011 Dew Tour host resorts provided 22' halfpipes.

Mount Snow bases its claim for over $3,000,000 in damages on the alleged loss of the "media value" promotional considerations.  Alli had no obligation to report to Mount Snow regarding the promotional considerations provided, however, following the 2009 and 2010 events, Alli voluntarily provided Mount Snow with event recaps.  Alli's recap for the 2009 event did not provide any assessment of the "value" of promotional considerations.  In the spring of 2010, Alli voluntarily provided Mount Snow with a recap of the 2010 event noting $2,000,000 in media value to Mount Snow.  Alli engaged SRi, a third party research firm, that assessed an average media and marketing valuation of approximately $2,400,000 for the host resorts of the 2009 events, approximately $1,900,000 for the host resorts of the 2010 events, and approximately $3,300,000 for the host resorts of the 2011 events, the year Killington replaced Mount Snow.  The tangible benefits received by host resorts include references and mentions on television and internet programming, signage, advertising, print, internet and local news editorials, and other promotional advertising.

---

[3] It is unclear from the Defendants' Statement of Undisputed Facts and Mount Snow's response whether the expenses were per year or total for both the 2009 and 2010 events. See Doc. 81-3 ¶ 54, Doc. 87 ¶ 54.

4

III.     Discussion

    A.     Legal Standard

Summary judgment is appropriate only where the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  The Court must resolve ambiguities and draw inferences in favor of the non-moving party.  Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (citation omitted).  "Where both parties have moved for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'"  Murray v. Int'l Bus. Machs. Corps., 557 F. Supp. 2d 444, 448 (D. Vt. 2008) (citing Schwabenbauer v. Bd. of Educ. of Olean, 667 F.2d 305, 314 (2d Cir. 1981)).

    The court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper."  Fischl v. Armitage, 128 F.3d 50, 56 (2d Cir. 1997) (internal quotation marks and citation omitted).  Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.  See, e.g., Fed. R. Civ. P. 56(e) 1963 advisory committee's note; Anderson, 477 U.S. at 255.

    B.     Mount Snow's Motion for Summary Judgment

Mount Snow seeks summary judgment on its breach of contract claim and a ruling it is entitled to recover damages measured by the "value of the promotional consideration" to be determined by a jury.  (Doc. 79.)  Defendants oppose the motion.  (Doc. 85.)  Defendants argue the contract was never fully executed and is not enforceable, but if it was Defendants properly

terminated either for cause or convenience under the contract after the 2010 event because Mount Snow would not commit to a 22' halfpipe.  Id. at 2-3.  Mount Snow argues, as a matter of law, the parties entered into a binding contract, which Defendants breached, entitling Mount Snow to damages.  (Doc. 79 at 9-14.)

A plaintiff must establish a breach of contract claim by a preponderance of the evidence. Lewis v. Cohen, 603 A.2d 352, 355 (Vt. 1991).  To prevail on a breach of contract action, there must be a contract and whether there was a contract between the parties is a material fact.  Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Corp., 921 F. Supp. 1206, 1212 (D. Vt. 1996).

Mount Snow asserts the parties' intent governs whether the contract is enforceable. (Doc. 79 at 9-10.)  To determine whether the parties intended to be bound, "'absent a fully executed document,'" id. at 10 (citation omitted), Vermont courts consider whether:  (1) either party expressly reserved the right not to be bound before the agreement is fully executed; (2) either party partially performed the contract; (3) all substantive terms were agreed upon; and, (4) the agreement is of the type typically committed to writing.  See Catamount Slate Prods., Inc. v. Sheldon, 845 A.2d 324, 329 (Vt. 2003).

Defendants respond that, in the absence of a fully executed contract, the Statute of Frauds prevents enforcement of the agreement because the agreement could not be completed in one year. (Doc. 85 at 5-6.)  The Vermont Statute of Frauds provides:  "An action at law shall not be brought in the following cases unless the promise, contract or agreement upon which such action is brought or some memorandum or note thereof is in writing, signed by the party to be charged therewith," and includes "[a]n agreement not to be performed within one year from the making thereof." Vt. Stat. Ann. tit. 12, § 181.

Setting aside the issue of Defendants' statute of frauds defense, under Vermont law, intent to be bound is a question of fact to be determined at trial.  Bixler v. Bullard, 769 A.2d 690, 694

(Vt. 2001); Ben & Jerry's Homemade, 921 F. Supp. at 1212 ("Whether the parties entered into a contract is a determination for the factfinder."). To discern intent, a trier of fact must consider "the words and deeds [of the parties] which constitute objective signs in a given set of circumstances." Bixler, 769 A.2d at 694 (alteration in original) (citation omitted). "No single factor [of the intent to be bound analysis] is decisive, but each provides significant guidance." R.G. Grp., Inc. v. Horn & Hardart Co., 751 F.2d 69, 75 (2d Cir. 1984).

Mount Snow asserts nothing in the record suggests either party expressly reserved the right not to be bound until the agreement was fully executed. (Doc. 79 at 10.) The agreement states it is "effective as of the date set forth above." (Doc. 79-5 at 24.) The "date set forth above" is "this ___ day of November, 2009." Id. at 1. Kelly Pawlak, Mount Snow's General Manager, signed the agreement, but did not date it. Id. at 24. Record evidence suggests she signed the agreement in January 2010. (Doc. 79-4 at 8-9.) The signature line for Chris Prybylo, Vice President of Events for Alli, is blank. (Doc. 79-5 at 24.) Neither party argues the agreement has been fully executed, but Mount Snow does not rule out the possibility. See Doc. 79 at 5 n.2. The agreement also contains a merger clause, stating the agreement "represents the complete and integrated agreement of the Parties" which "supersedes and negates all prior negotiations, discussions and agreement, . . . all of which are deemed merged," and "may not be modified or amended without prior written consent of the parties." (Doc. 79-5 at 24.) The Second Circuit has found a merger clause to be "persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 324 (2d Cir. 1997); see also R.G. Grp., Inc., 751 F.2d at 76 (stating inclusion of clause requiring modification in writing indicated parties did not intend to be bound prior to execution of contract). In light of this evidence, the Court finds a reasonable inference can be drawn in favor of Defendants that the parties did not intend to be bound in the absence of a writing.

Mount Snow asserts it partially performed the agreement by hosting the 2010 Dew Tour event on February 4-7, 2010.  (Doc. 79 at 10-11.)  Defendants respond that the parties began preparing for the event in November 2009, so both parties' performance regarding the 2010 event cannot be indicative of the existence of an agreement.  (Doc. 85 at 9.)  Courts have found, where there has been performance prior to an alleged agreement, the fact that the party continued performing after "'does not strongly indicate the existence of an agreement.'"  Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC, 861 F. Supp. 2d 344, 357 (S.D.N.Y. 2012) (quoting Kargo, Inc. v. Pegaso PCS, S.A. de C.V., No. 05-cv-10528, 2008 WL 4579758, at *9 (S.D.N.Y. Oct. 14, 2008)). A reasonable inference can be drawn in favor of Defendants on this factor.

Mount Snow asserts the parties had agreed to all substantive terms of the agreement as of January 25, 2010, and that an Alli representative told Mount Snow, unequivocally, "yes," Mount snow could sign the agreement.  (Doc. 79 at 11.)  The email exchange, dated Sunday January 24, 2010, reflected that Ms. Koprowski, an Alli representative wrote:  "Yep.  Sending over today.  Just a few comments on that change.  Chris [Prybylo] and I will call you tomorrow."  (Doc. 85-7.)  At her deposition, regarding the January 24 email exchange, Ms. Koprowski affirmatively responded to the inquiry "you were under the impression that the terms of the contract had been pretty much agreed to."  (Doc. 79-4 at 51:22-25 (emphasis added).)  She also gave conflicting responses to separate inquiries whether she assumed Chris Prybylo had signed the agreement after Mount Snow sent a signed copy.  Compare Doc. 79-4 at 61:22-24 with Doc. 79-4 at 63:10-12.  In light of this evidence, the Court draws a reasonable inference in favor of Defendants that the evidence does not demonstrate "unequivocal acceptance" by Alli of the terms of the written agreement.

When viewed in the light most favorable to Defendants, the party opposing summary judgment, conflicting facts require consideration by a trier of fact.  Bixler, 769 A.2d at 694-96 (reversing grant of summary judgment; noting under Vermont law intent to be bound is a question

of fact to be determined at trial).  In the absence of an enforceable contract, the Court does not

reach the issue of breach and entitlement to damages.  Mount Snow's motion for summary

judgment is denied.

 C.  Defendants' Motion for Summary Judgment

  1.  Breach of Contract

 Defendants move for summary judgment on all claims in the complaint (Doc. 81), arguing

primarily that the breach of contract claim must be dismissed because Mount Snow cannot establish

damages.  (Doc. 81-1.)  Mount Snow opposes the motion.  (Doc. 86.)  Defendants principally argue

Mount Snow's claimed damages of the value of promotional consideration is not cognizable.

 As noted above, at the summary judgment stage, the benefit of all reasonable doubts and

inferences is in the nonmoving party's favor.  Vermont law requires proof of damages as an element

of a breach of contract claim.  Ianelli v. U.S. Bank, 996 A.2d 722, 728 (Vt. 2010).  Vermont

recognizes two types of damages:  "direct damages that naturally and usually flow from the breach

itself, and special or consequential damages, which must pass the tests of causation, certainty and

foreseeability."  Waterbury Feed Co. v. O'Neil, 915 A.2d 759, 766 (Vt. 2006) (internal quotation

marks and citation omitted).  Consequential damages must also have been contemplated by the

parties at the time of contracting.  Id.  The Vermont Supreme Court has more fully described the

measure of damages as:  (1) the loss in value to plaintiff of the other party's performance caused by

the failure or deficiency, plus (2) any other loss, i.e., consequential or special, loss, caused by the

breach, less (3) any cost or other loss avoided by not having to perform.  Murphy v. Stowe Club

Highlands, 761 A.2d 688, 698 (Vt. 2000).[4]

---

 [4] Both parties cite Tour Costa Rica v. Country Walkers, Inc., 758 A.2d 795 (Vt. 2000), for
the proposition that Vermont applies expectation, or "benefit of the bargain," damages for breach
of contract.  (Doc. 81-1 at 16; Doc. 86 at 5.)  The Tour Costa Rica Court stated, in a discussion of
breach of contract remedies in the context of a promissory estoppel claim:

The right to damages flows from a violation of a legal right.  Vt. Elec. Supply Co. v. Andrus, 315 A.2d 456, 459 (Vt. 1974) (citing Fullam v. Steams, 30 Vt. 443, 454-57 (1857)).  In determining the amount of any damage, a trier of fact "is not to be deterred . . . by the fact that the damages are not susceptib[le] of reduction to an exact money standard.  Evidence allowing estimation of an amount with reasonable certainty is sufficient . . . ."  Id. (reversing and remanding for lower court to consider damages evidence).  Accordingly, Vermont does not require "precise figures of damages." Waterbury Feed, 915 A.2d at 766.  "[W]here damage calculations are based on approximations or estimates not supported by documentation, such shortcomings do not negate them as evidence, but may impact their weight as evidence."  Id. at 767 (instructing lower court on remand to consider testimony on damages, make credibility findings, and calculate damage award, if appropriate); see also A. Brown, Inc. v. Vermont Justin Corp., 531 A.2d 899, 902 (Vt. 1987) (noting estimates of damages expressed in dollars without documentary evidentiary support is an issue of weight of the evidence).  If damages cannot be measured in money, the trier of fact may be required "to translate inchoate qualities into dollar damages."  A. Brown, 531 A.2d at 902.

Defendants rely on a Second Circuit case for the proposition that "'the existence of damage must be certain.'"  (Doc. 81-1 at 17(quoting Contemporary Mission, Inc. v. Famous Music Corp., 557 F.2d 918, 926 (2d Cir. 1977).)  In addition to being over thirty years old, the case applies New York law.  The Contemporary Mission Court, however, goes on to note: "When the existence of

---

Expectation damages [] provide the plaintiff with an amount equal to the benefit of the parties' bargain.  One potential component of expectation damages is loss of future profits.  The purpose of expectation damages is to "put the non-breaching party in the same position it would have been [in] had the contract been fully performed."

Tour Costa Rica, 758 A.2d at 802 (citing McKinley Allsopp, Inc. v. Jetborne Int'l, Inc., 1990 WL 138959, at *8 (S.D.N.Y. Sept. 19, 1990).  Tour Costa Rica was decided prior to the Vermont Supreme Court cases cited above and cites an unpublished Southern District of New York opinion for the above proposition.

damage is uncertain or speculative, the plaintiff is limited to the recovery of nominal damages."
557 F.2d at 926.  Much more recently, the Second Circuit has stated:  "the fact that . . . damages may
be difficult to ascertain does not relieve the district court of its duty to award . . . damages if actual
injuries are suffered."  Milburn v. Coughlin, 83 F. App'x 378, 380 (2d Cir. 2003) (citing Story
Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562 (1931) ("'The rule which
precludes the recovery of uncertain damages applies to such as are not the certain result of the
wrong, not to those damages which are definitely attributable to the wrong and only uncertain in
respect of their amount.'")).

Defendants also cite, and Mount Snow seeks to distinguish, Upper Deck Co. v. BreaKey
Int'l, BV, 390 F. Supp. 2d 355 (S.D.N.Y. 2005).  In Upper Deck, BreaKey sought damages of
$6 million in unspent advertising Upper Deck had promised in connection with an exclusive license
to BreaKey's product.  The court held there was no evidence the failure to spend the marketing and
advertising minimums caused a loss to BreaKey on a dollar-for-dollar basis.  Id. at 357.  It noted
damages are generally measured by the non-breaching party's actual loss.  Id. at 362 (citing
Restatement of Contracts § 347).  The court concluded:  "the actual loss to BreaKey was the value
to the BreaKey brand that the advertising would have generated.  That number is a disputed fact.
Accordingly, it is inappropriate to preclude BreaKey on summary judgment from proving the
amount of that actual loss."  Id.

Defendants acknowledge the Upper Deck Court's holding that BreaKey would have to
prove the amount of actual loss, i.e., the value to the brand the advertising would have generated, at
trial.  (Doc. 81-1 at 19.)  Mount Snow acknowledges the actual loss in Upper Deck was limited to
the value the advertising would have generated for the brand.  (Doc. 86 at 9.)  Mount Snow attempts
to distinguish the case by arguing a promise to spend advertising dollars is "far different" than the
promotional consideration promised by Alli and actually calculated and measured by Alli in a dollar

value.  Id.  As found above, it is for a trier of fact to determine first whether the parties entered an enforceable contract, if so, whether Defendants breached that contract, and if and to what extent Mount Snow was damaged.

As with Mount Snow's motion, when viewed in the light most favorable to the party opposing summary judgment, here Mount Snow, triable issues of fact as to whether Mount Snow was injured and the extent of the damages are for a trier of fact.  Accordingly, Defendants' motion for summary judgment is denied with regard to the breach of contract claim.

2.     Breach of Implied Covenant of Good Faith and Fair Dealing

In Count II, Mount Snow alleges breach of the implied covenant of good faith and fair dealing.  Compl. ¶¶ 29-34.  While Defendants purport to move for judgment dismissing the complaint (Doc. 81), Defendants make no argument concerning the breach of implied covenant claim in either their memorandum (Doc. 81-1) or reply (Doc. 91) in support of their motion.

The covenant of good faith and fair dealing is implied in every contract and "protects against conduct which violates community standards of decency, fairness or reasonableness."  Harsch Props., Inc. v. Nicholas, 932 A.2d 1045, 1050 (Vt. 2007) (internal quotation marks and citations omitted).  Vermont law does not recognize a separate cause of action for violation of the covenant of good faith and fair dealing when a plaintiff also pleads a breach of contract claim based on the same conduct.  Ferrisburgh Realty Investors v. Schumacher, 992 A.2d 1042, 1052 (Vt. 2010).  Mount Snow asserts Defendants "surreptitious" negotiation with and subsequent move to Killington Resort, a major competitor of Mount Snow, for the 2011 Winter Dew Tour east coast event breached the implied covenant.  (Doc. 101 at 7-8.)  Drawing a reasonable inference in favor of Mount Snow, the asserted actions of Defendants go beyond the conduct alleged regarding the breach of contract claim.  Accordingly, summary judgment on this claim is improper.

3.      Breach of Contract Implied in Law or Fact

In Count III, Mount Snow alleges breach of contract implied in law or fact.  Compl. ¶¶ 35-39.  Defendants argue any breach of implied contract claim must be dismissed because Mount Snow cannot prove unjust enrichment (Doc. 81-1 at 24), and Mount Snow waived the claims by failing to respond to the two sentence argument in Defendants' motion.  (Doc. 91 at 10.)  Defendants include legal argument and support in their post-hearing memorandum.  (Doc. 100 at 3-4.)  Mount Snow does not address Defendants' argument in its opposition and does not differentiate between contracts implied in law and contracts implied in fact in its post-hearing briefing.  See Doc. 99; Doc. 101 at 8.

Vermont law recognizes "a plain distinction between contracts implied in fact and contracts implied in law."  Underhill v. Rutland. R.R. Co., 98 A. 1017, 1021 (Vt. 1916).  Contracts implied in law are "fictions invented for the purpose of enforcing legal duties where no actual contract exists." Id.  Contracts implied in fact are based on "actual agreement of the parties, deduced by the trier from the conduct of the parties and the circumstances of the case."  Id.

To prevail on a contract implied in law claim, a plaintiff must prove:  "(1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value."  Center v. Mad River Corp., 561 A.2d 90, 93 (Vt. 1989).  Because Mount Snow has not alleged it conferred any benefit on Defendants in connection with the 2011 Winter Dew Tour east coast event, a contract implied in law claim cannot stand.  Accordingly, summary judgment is granted as to the portion of Count III alleging a breach of contract implied in law claim.

To prevail on a contract implied in fact claim, a plaintiff must demonstrate mutual intent to contract and acceptance of the offer.  See LaRose v. Dep't of Emp't Sec., 431 A.2d 1240, 1243 (Vt. 1981) (citing Russell Corp. v. United States, 537 F.2d 474, 482 (Ct. Cl. 1976)).  "Contracts

13

implied in fact are based upon an actual agreement of the parties, deduced by the trier from the conduct of the parties and the circumstances of the case." Underhill, 98 A. at 1021.  While mutuality of intent and offer and acceptance are the same elements as required for an express contract, the nature of the evidence differs:  "The fact that an instrument was not executed is not essential to consummation of the agreement.  It is essential, however, that the acceptance of the offer be manifested by conduct that indicates assent to the proposed bargain." Russell Corp., 537 F.2d at 482.

Here, where the parties discussed a two-year contract covering the 2010 and 2011 east coast Winter Dew Tour events, Mount Snow signed the agreement, the 2010 event was held at Mount Snow, and Defendants' agent referenced the agreement in subsequent discussions regarding the 2011 event, a reasonable inference can be drawn in favor of Mount Snow that the parties actually agreed.  Accordingly, summary judgment on the portion of Count III alleging a breach of contract implied in fact is improper.  As the parties acknowledge, Mount Snow may not recover on both its breach of contract claim and breach of contract implied in fact claim.  (Doc. 100 at 4; Doc. 101 at 8.)  See also Nat'l Gear & Piston, 861 F. Supp. 2d at 355 ("Although the theories of express contract and of contract implied in fact are mutually exclusive, the federal rules do not require consistency in pleadings, and therefore Plaintiff may claim alternatively on an express contract and an implied contract." (internal quotation marks and citation omitted)).

    4.    <u>Constructive Fraud</u>

In Count IV, Mount Snow alleges constructive fraud.  Compl. ¶¶ 40-48.  Because Counts I, II and III remain, Count IV is dismissed per the representations of Mount Snow in their post-hearing memoranda.  See Doc. 99 at 2 ("With respect to the claim for constructive fraud [], at this time Plaintiff intends on withdrawing that claim without prejudice."); Doc. 101 at 9 ("Assuming

Mount Snow's contractual claims, i.e. Counts I, II, and III, survive summary judgment, Mount Snow intends to withdraw its claim for constructive fraud.").

IV.    Conclusion

For the above reasons, Mount Snow's Motion for Summary Judgment (Doc. 79) is denied and Defendants' Motion for Summary Judgment (Doc. 81) is granted in part and denied in part. Accordingly, the portion of Count III alleging a breach of contract implied in law and Count IV are dismissed.  If the parties agree, a second ENE session may be scheduled with Attorney Bisson on or before September 30, 2013.  See Doc. 98 at 53-54.  In the event the case does not settle or a second ENE is not scheduled, the case will be placed on the next available trial calendar after December 1, 2013.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 21st day of August, 2013.


/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge